**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE**

**CIVIL ACTION NO. 05-307-DLB**

**PAUL S. CASTELLANOS**                                                                                            **PLAINTIFF**

vs.                                              **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                                       **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Paul S. Castellanos filed an application supplemental security income (SSI) payments on May 19, 2003.[1] His application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on October 22, 2004 in Prestonsburg, Kentucky. On January 7, 2005, ALJ Kemper issued an unfavorable decision, finding that Plaintiff was not eligible for SSI payments. The Appeals

---

[1] Plaintiff filed a previous application for SSI payments on February 20, 2002. That application was denied initially and upon reconsideration. After a hearing was held on April 7, 2003, the ALJ issued an unfavorable decision on May 6, 2003. That decision that was ultimately affirmed by this Court on July 20, 2005.

1

Council declined further review by letter dated September 1, 2005.  The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

Plaintiff, who was 36 years old at the time of the hearing, completed an eighth grade education and attended special education classes.  He alleges an inability to work beginning on December 31, 1995 due to lower back and knee pain; arthritis; shortness of breath; acid reflux; nerve problems, including depression and anxiety; a learning disorder, including reading and writing problems; chronic fatigue; and insomnia.

Having exhausted his administrative remedies, Plaintiff filed the instant suit on September 29, 2005.  The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

**A.     Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any relevant time, and resolved this step in his favor. (Tr. 15). At Steps 2 and 3, the ALJ found that Plaintiff has severe mental impairments due to his borderline intellectual functioning (BIF) and learning disorder. (Tr. 16). He concluded, however, that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 17). At Step 4, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels, but is moderately limited in his ability to understand, remember, and carry out detailed job instructions; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; and interact appropriately with the general public. (Tr. 19). He is, however, capable of performing simple, routine tasks without excessive productivity demands based upon oral instructions. (*Id.*).

At Step 4, the ALJ concluded that Plaintiff did not have any past relevant work that he could return to. (*Id.*). He, therefore, proceeded to Step 5, where he found that there are a significant number of jobs Plaintiff can perform, including janitor (heavy), material handler (medium), machine tender (light), and assembler (sedentary). (Tr. 19-20). This conclusion resulted from testimony by a vocational expert ("VE"), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.   Analysis**

In this appeal, Plaintiff's sole contention of error is that the ALJ failed to expressly consider a "third-party function report" completed by Kimberly Murphy, his girlfriend of nine years, in violation of 20 C.F.R. § 416.913(d). Specifically, he claims that Ms. Murphy's statement corroborates the seriousness of his allegations and bolsters his credibility. Plaintiff candidly admits that this very argument was considered and rejected by the Western District of Tennessee in *Dunlap v. Barnhart*, No. 03-2514, 2004 WL 784837 at *10 (W.D. Tenn. Mar. 15, 2004). He contends, however, that the court in that case did not specifically address the effect of the 2000 amendments to the regulation.[2] In response, the

---

[2]In support, he cites to the following language in the Federal Register:

> We are redesignating prior paragraph (e) of those sections, "Information from other sources," as paragraph (d). Our intent in switching the positions of these two paragraphs is to make it clearer that, when we decide whether the evidence in a case is complete enough for a determination, we consider all the evidence in the case record, including the medical evidence from acceptable medical sources identified in paragraph (a), information from the individual, and any evidence that may have been provided by other sources, such as those identified in final paragraph (d).

65 FR 34950-01, at *34952.

4

Commissioner argues that while an ALJ may use evidence from non-medical sources, such as relatives, friends, etc., the regulation does not impose a duty upon an ALJ to expressly consider and weigh this type of evidence absent supporting medical documentation. (Doc. #10, p.9).

In *Dunlap*, the claimant argued that the ALJ failed to take into consideration the lay witness testimony of two non-medical sources, pursuant to 20 C.F.R. § 404.1513(e)(2).[3] She argued that the ALJ's written decision did not specifically indicate whether he considered the testimony and statements of her daughter-in-law and her friend. The court began by citing *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1054 (6th Cir. 1983), where the Sixth Circuit held that "[p]erceptible weight must be given to lay testimony where ... it is fully supported by the reports of the treating physicians." *Dunlap*, 2004 WL 784837 at *10. It noted, however, while the testimony and statements of lay witnesses must be considered, an ALJ does not have to discuss every piece of evidence presented as long as the record is developed fully and fairly. *Id.* citing *Higgs v. Bowen,* 880 F.2d 860, 864 (6th Cir. 1988). With this framework in mind, the court concluded that, even though the ALJ did not specifically address the written statements of the claimant's daughter-in-law and friend in his decision, he did specifically indicate that he carefully considered "all the evidence, including documents identified in the record as exhibits, testimony at the hearing,

---

[3]As previously noted, *see supra* note 2, the 2000 amendments switched paragraphs (d) and (e) of 20 C.F.R. §§ 404.1513, 416.913. Therefore, even though *Dunlap* was a Title II case and involved section 404.1513(e)(2) ("Information from non-medical sources"), that section has since been re-designated section 404.1513(d)(4). This Title XVI case involves the parallel section, section 416.913(d)(4). Therefore, the Court finds the reasoning in *Dunlap* instructive.

and any arguments presented." *Dunlap*, 2004 WL 784837 at *10. According to the court, the ALJ did not err in that regard.[4]

More importantly, the Court finds that the language of 20 C.F.R. § 416.913(d) belies Plaintiff's argument that the ALJ was not only required to consider, but also discuss Ms. Murphy's statement in the body of his written decision.[5] The regulation provides, in pertinent part:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work or, if you are a child, how you typically function compared to children your age who do not have impairments. Other sources include, but are not limited to – ...
>
> (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

20 C.F.R. § 416.913(d) (emphasis added). In addition, the Court finds that Murphy's statement was not probative of either: 1) the severity of Plaintiff's impairments or 2) the effect of Plaintiff's impairments on his ability to work. For all these reasons, the Court concludes that the ALJ's decision is, indeed, supported by substantial evidence; and that Plaintiff's argument to the contrary is without merit.

---

[4]Similarly, the ALJ in this case stated, "[u]pon reviewing all of the evidence of record, [he] concludes that the claimant is not disabled ...." (Tr. 14).

[5]Ms. Murphy provided the following statement:

Paul has back and knee troubles[,] and he [has] nerve trouble[,] and can't read or write. And this bothers him alot [sic]. I've tryed [sic] to teach [sic] to him but he can't comprehd [sic] things. He forgets his own phone number. Can't count money. Gets hateful alot [sic]. He's on medicine for pain and nerves. We hire someone to mow grass or any other thing that needs to be done. He has trouble sleeping.

(Tr. 112).

6

## III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 26th day of April, 2006.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-307-CastellanosMOO.wpd